IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CYNTHIA K. DUVALL                                                                         PLAINTIFF

V.                                          NO. 12-2199

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration                DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Cynthia K. Duvall, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

Plaintiff protectively filed her application for DIB on November 16, 2009, alleging disability since December 9, 2009, due to "1. Chronic depressive 2. High blood pressure." (Tr. 107-108, 144, 148). An administrative hearing was held on October 7, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 24-43).

By written decision dated February 14, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe -

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

hypertension, depression and hypothyroidism.  (Tr. 12).  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 13).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> lift/carry 20 pounds occasionally and 10 pounds frequently, sit for six hours and stand/walk for six hours. The claimant can frequently climb, balance, crawl, kneel, stoop and crouch. Ms. Duvall is further limited and can do work where interpersonal contact is incidental to the work performed and where the complexity of tasks is learned and performed by rote with few variables and little judgment required.  The supervision required is simple, direct and concrete.

(Tr. 14-15).   With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as poultry plant production worker, production line assembler, and sewing machine operator. (Tr. 17-18).  Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on July 2, 2012.  (Tr. 1-4).  Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 10, 11).

I.    **Evidence Presented:**

Plaintiff was born in 1959, and on the date of the application, was working two or three days a week, performing production work on the chicken line at OK Foods.  (Tr. 27, 29).  The records reflect that on November 25, 2009, Plaintiff presented to the Good Samaritan Clinic complaining of high blood pressure and depression.  (Tr. 225). She was assessed with HTN (hypertension).  (Tr. 225).

She again presented herself to Good Samaritan Clinic on December 14, 2009, where she complained that she had headaches and dizziness, and was assessed with hypertension and hypothyroidism. (Tr. 224). That report also indicates that Plaintiff was smoking one pack of cigarettes per day. (Tr. 224).

In an undated recent medical treatment form, Plaintiff reported that she had not been to see a doctor, because she had no insurance and could not afford one. (Tr. 188). She also reported that although she needed medication to treat high blood pressure and chronic depression, she could not get them, because she could not afford them. (Tr. 189).

On January 25, 2010, Dr. Bill F. Payne completed a Case Analysis, concluding that Plaintiff's alleged physical impairments were not severe. (Tr. 245).

On February 12, 2010, a Psychiatric Review Technique form was completed by Dr. Kay M. Gale, who concluded that Plaintiff had mild degrees of limitation in all three functional limitations and no episodes of decompensation. (Tr. 241). Dr. Gale noted:

> There is a mention of depression in the records from Good Samaritan. However, there is no description of any significant depression. In addition, she reports working 40 hours a week when she applied for disability. She lives with her fiancé. She goes to the shelter to eat. She does not have a stove. Based on the evidence, she does not have a severe mental impairment.

(Tr. 243).

On May 20, 2010, Jon Etienne Mourot, Phy.D., completed a Case Analysis, and concluded that after a careful review of the records, the determination of February 12, 2010, was affirmed as written. (Tr. 248).

On May 21, 2010, Dr. Lucy Sauer completed a Case Analysis, stating that she had

reviewed all of the available medical information and affirmed the decision of January 25, 2010, as written. (Tr. 251).

At the hearing, Plaintiff testified that she was still having headaches every day and took Ibuprofen daily. (Tr. 31-32). She stated that she was still having high blood pressure problems and was not taking medication for that because she was not working and did not have the income to pay for the medication. (Tr. 32). She also testified that she had chest pains and got dizzy as a result of her blood pressure. (Tr. 33). She also stated that she was not being treated for hypothyroidism because of having to pay for the medication. (Tr. 33). She testified that on a daily basis, she sat at the computer, playing games between five and six hours a day, that her fiancé did the housework and cooking, and that they both did the grocery shopping. (Tr. 35). She stated that she did not need any assistance attending to her personal needs, and went to church once a week. (Tr. 36, 38). She stated that her back hurt, although she had never seen a doctor for it, and that her legs were very weak from her back. (Tr. 40). Plaintiff testified that she was not receiving any medical care at that time, because she had no money to go. (Tr. 41). She also stated that the Good Samaritan Clinic stopped accepting her because she was not working anymore. (Tr. 41).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III.  Discussion:

Plaintiff raises the following issues on appeal: 1) The ALJ did not fully and fairly develop the record; 2) The ALJ improperly discredited Plaintiff's subjective complaints; 3)The ALJ's RFC finding is contrary to the evidence; and 4) The ALJ's step five conclusion is erroneous. (Doc. 10).

### A.  Failure to Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 989).

Plaintiff contends that the ALJ should have contacted the Illinois clinic that last treated

Plaintiff in May 2007. As noted by Defendant, although the ALJ is responsible to ensure that a claimant's record is fully and fairly developed, Plaintiff still must prove that she was disabled in the relevant period. 20 C.F.R. § 404.1512(a).

At the hearing, the ALJ asked Plaintiff's counsel if he had reviewed the file to his satisfaction, to which counsel stated he had, and had no objections. (Tr. 27). The ALJ then asked counsel if there was anything else he was still trying to get, to which counsel stated "Not at this time. I know of nothing else that we could obtain." (Tr. 28). The treatment at the Illinois clinic predates the onset date by two and one-half years, and is of questionable relevance. In addition, the documents indicate that Plaintiff routinely worked eight to twelve hour days from September 2007, through August 2009. (Tr. 150). Therefore, in light of Plaintiff's work history, the ALJ had no reason to inquire about the Illinois records.

Plaintiff further argues that the ALJ should have obtained consultative examinations to evaluate her physical and psychological impairments. Once again, Plaintiff is responsible for submitting medical evidence in order to prove her claim of disability. The fact that there is an absence of medical evidence to support disability does not require the ALJ to order consultative examinations. On the contrary, the fact that Plaintiff did not seek further medical treatment for her alleged impairments indicates that they were not as disabling as alleged.

Plaintiff contended that she was unable to afford medical treatment or medicine. However, there is no evidence, other than Plaintiff's testimony, that Plaintiff was denied treatment because of her inability to pay. In fact, at her last visit to Good Samaritan Clinic on December 14, 2009, the record reflects that Plaintiff was to return in one month. (Tr. 224). In addition, in that same record, it was noted that Plaintiff was smoking one pack of cigarettes daily, which, as

noted by the ALJ, indicates that she apparently chose to spend her money on cigarettes rather than medicine. (Tr. 16).

The Court believes there is substantial evidence to support the fact that the ALJ did not fail to fully and fairly develop the record.

**B.    Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ addressed Plaintiff's daily activities, noting that she had reported on January 11, 2010, that she did household chores including cleaning and laundry and that she fed, watered and took care of her dogs, and had no problem with personal care. (Tr. 13). The ALJ also noted that the lack of ongoing medical care during a claimed period of disability was inconsistent with allegations of disabling impairments. (Tr. 15). The ALJ reported that all of the medications prescribed by the Good Samaritan Clinic were shown on the retail prescription program drug list at Walmart.com ($4.00 for a 30-day supply and $10.00 for a 90-day supply). (Tr. 16). The ALJ

also noted some other inconsistencies in Plaintiff's statements, i.e. that although she reported that she was tired all the time, she also reported in a Pain and Other Symptoms report dated January 11, 2010, that she did not suffer from unusual fatigue and did not require naps or rest. (Tr. 16, 164). The ALJ discussed the fact that at the time Plaintiff filed her application for benefits, she was continuing to work at least part time, was able to walk to places, perform her personal care, perform some household chores, shop, go to church, care for her dogs, and play games on the computer. (Tr. 16). The ALJ thoroughly considered the relevant factors in determine credibility, and based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility findings.

### C. RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The ALJ found that Plaintiff could perform light work with certain limitations. (Tr. 15). As noted by Defendant, in this case, Plaintiff's entire relevant medical history consists of two treatment notes from the Good Samaritan Clinic, and these visits were made only after she protectively filed her DIB application. The Court believes that based upon the record as a whole, as well as the reasons given in Defendant's well-stated brief, there is substantial evidence to support the ALJ's RFC findings.

### D. Plaintiff's Ability to Perform Other Work:

The ALJ found that Plaintiff would be capable of performing work as a poultry plant production worker, production line assembler, and sewing machine operator. This conclusion was based upon the VE's responses to hypothetical questions posed by the ALJ. The Court notes that Plaintiff's counsel was afforded the opportunity to propound cross interrogatories and supplemental cross interrogatories to the VE. The hypothetical question posed to the VE by the ALJ reflected those impairments the ALJ accepted as true and which are supported by the record. Accordingly, the Court believes that the VE's responses to the ALJ's hypothetical constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing other work as a poultry plant production worker, production line assembler, and sewing machine operator. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from VE based on properly phrased hypothetical question constitutes substantial evidence).

Based upon the ALJ's RFC findings, which this Court believes to be supported by substantial evidence, along with the responses of the VE, the Court is of the opinion that substantial evidence supports the ALJ's finding that there were jobs Plaintiff could perform.

### IV. Conclusion:

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of July, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)